Filed 5/16/24  P. v. Rayl CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>KELCY BONDELL RAYL,<br><br>          Defendant and Appellant. | A167791<br><br>(Sonoma County<br>Super. Ct. No. SCR 746954-1) |

Defendant Kelcy Bondell Rayl appeals from the sentence imposed following her conviction for driving under the influence of alcohol.  She contends the trial court erred in failing to impose the lower term pursuant to Penal Code section 1170, subdivision (b)(6) (§ 1170(b)(6)) because she suffered psychological, physical, or childhood trauma and was the victim of intimate partner violence.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Charges*

In June 2022, the Sonoma County District Attorney filed a two-count information charging Rayl with driving under the influence of an alcoholic beverage (DUI) within 10 years of a prior felony DUI offense (Veh. Code, §§ 23152, subd. (a), 23550.5; count 1) and driving with a blood alcohol content (BAC) of .08 percent within 10 years of a prior felony DUI offense (*id.*, §§ 23152, subd. (b), 23550.5; count 2).  As to both counts, it was alleged that

1

Rayl's BAC was .15 percent or more within the meaning of Vehicle Code section 23578.[1]  The district attorney also alleged various factors in aggravation.

*Jury Trial*

A jury trial began in January 2023.  California Highway Patrol Officer Brad Hanks testified he was on duty at 3:20 p.m. on June 19, 2021, patrolling the area of the Napa Sonoma County line, when he observed Rayl's vehicle parked diagonally on the side of the road.[2]  The engine was running, and the left turn signal was on.  Hanks pulled over to conduct a welfare check and found Rayl in the driver's seat.  He saw an open bottle of wine in the center console cupholder and an empty wine bottle on the passenger floorboard tucked halfway under the seat.  Hanks asked Rayl to get out of her car.  She stumbled, the smell of alcohol emanated "from her person and her breath," her eyes were red and watery, and her speech was slurred.  Hanks asked Rayl if she had driven the car she was in, and she said yes.  Rayl said she had driven from Napa, which was about 15 miles away.  No one else was in the car.  Rayl said she had been drinking in her car and she started drinking at 4:30 p.m., although it was only 3:25 at this time.  Hanks asked Rayl to perform field sobriety tests.  He started to administer "the walk and turn," but Rayl was not following directions and she stumbled and fell into the traffic lane, so he stopped the test for her safety.  Rayl could not keep her

---

[1] Vehicle Code section 23578 provides, "if a person is convicted of [driving under the influence in] a violation of Section 23152 or 23153, the court shall consider a concentration of alcohol in the person's blood of 0.15 percent or more, . . .  as a special factor that may justify enhancing the penalties in sentencing . . . ."

[2] Hanks had been in the same area at 3:00 p.m. and did not notice the car on the side of the road at that time.

balance for "the one-leg stand," she said she could not do "the modified Romberg balance test," and she declined to take a preliminary alcohol screening test.

Hanks arrested Rayl for driving under the influence of alcohol based on her unsteady gait, red watery eyes, strong odor of alcohol, and her performance on the field sobriety tests. After the arrest, Hanks took a chemical breath test of Rayl at 3:48 p.m. and again two minutes later. The test results showed Rayl had a BAC of .30 percent at 3:48 p.m. and .29 percent at 3:50 p.m.

Rayl testified in her own defense. On June 19, 2021, she drove with her mother from Sausalito to Napa to have lunch with her great aunt. Rayl testified she started struggling with alcohol in her 40's, but at the time of the lunch, she had not been drinking any alcohol since November 2020. After lunch, Rayl was driving back to Sausalito by herself when she checked her voicemail; she received an upsetting message that caused her to "realize[] that [her] marriage was over." She started hyperventilating and "was having a severe anxiety/panic attack." She called a friend and said she had to pull over to take medication as she is prescribed Xanax for panic attacks. Rayl testified that she pulled off the road onto the shoulder; she did not have her usual "emergency Xanax," "but what [she] did have was a gift basket with two bottles of wine." Rayl knew "from past experience" that alcohol "immediately relieves panic," so she "guzzled the first bottle." Then she did breathing exercises and had her emotional support dog sit on her lap for about five minutes. She called her friend again, and he said he would come get her. Rayl testified that she drank from the second bottle of wine while she talked on the phone. When she ended her phone call, Officer Hanks was

3

already approaching her car. Rayl testified the only alcohol she drank that day was the wine she had after she pulled over to the side of the road.

On February 6, 2023, the jury found Rayl guilty of driving under the influence (count 1) and driving with a BAC of .08 percent (count 2) and found true the allegation that Rayl's BAC was .15 percent or more.

*Court Trial*

In a bifurcated proceeding, the trial court decided the allegations of prior convictions and aggravating factors. The court found Rayl had two prior convictions for felony DUI offenses as alleged in counts 1 and 2 and found true the following two aggravating factors: (1) Rayl's prior convictions were numerous (Cal. Rules of Court, rule 4.421(b)(2)) and (2) she had served two prior prison terms (*id.*, rule 4.4421(b)(3)). The court found that, in addition to the two prior felony DUI convictions, Rayl had three prior misdemeanor convictions for DUIs and a grand theft conviction.

*Sentencing*

In March 2023, Rayl filed a sentencing brief in which she urged the court to impose the lower term on the ground two mitigating circumstances listed in section 1170(b)(6) applied. Rayl argued she had experienced (1) childhood trauma in "witnessing her father physically abusing her mother and being sexually assaulted at age 13" and (2) "intimate partner violence at the hands of her ex-husband." Rayl, who was 59 years old, reported that she was diagnosed with post-traumatic stress disorder at age 13 and panic and anxiety disorders in 2006 and 2016 and that she took prescription medication for these conditions. She argued, "These psychological traumas clearly contributed to [her] alcoholism and her decision to drink in her car that day."

The probation department (Probation) determined that factors in aggravation outweighed those in mitigation and recommended imposition of

4

the upper term of three years. Probation "sympathize[d] with [Rayl]'s experienced trauma as a child, her struggles with mental health, and being the victim of domestic violence," but emphasized this was her third DUI conviction in 10 years. Probation was "concerned that the defendant may be minimizing her conduct in this matter which is likened to her two prior DUIs in that, while she admits to drinking, she vehemently denies driving." Rayl had been released on pretrial supervision (PTS) and fitted with an alcohol monitor in June 2021. She violated the PTS term that she not possess or use alcohol; the monitoring device registered a .09 BAC and .067 BAC on two days in October 2021. Rayl tested positive for alcohol on November 1, 2021, and she admitted herself to the hospital in mid-November. Rayl was allowed to remain on PTS, but "alcohol-drinking events" were reported on December 27 and 28, 2021. She was remanded to custody and PTS was terminated in January 2022. Probation noted that Rayl believed "she does not pose a safety risk to the community when she drinks alcohol, [but] probation believes otherwise."

At the sentencing hearing, the prosecutor agreed with Probation's recommendation. The prosecutor noted that, despite significant treatment (Rayl "did at least five different programs that were either intensive outpatient or inpatient . . . from 2006 through June of 2021"), Rayl's current offense was "another DUI at an extremely high BAC of .29/.30" which "led to her putting the public at risk."

Addressing Rayl's request for a lower term under section 1170(b)(6), the prosecutor did not dispute that Rayl suffered childhood trauma and domestic violence. But she argued the circumstance that Rayl was a domestic violence victim did not "actually contribute[] to the commission of this offense," given that Rayl's history of DUIs predated the documented

5

domestic violence incident of 2019 and the current offense occurred over two years after the incident of domestic violence.[3]  As to the circumstance that Rayl experienced childhood trauma, the prosecutor argued, "the lower term would be contrary to the interest of justice" because "Rayl has had a significant number of chances at probation, at prison, at treatment" "to address [her] drinking and driving habits," "yet we are still here on [at least] DUI number six in her lifetime."  Further, the prosecutor explained to the court, while Rayl acknowledged she is an alcoholic, "she continues to deny not only this incident but other DUI incidents that she is drinking and driving and, therefore, she's denying she's putting the public at risk."[4]  The prosecutor argued that a lower term was not in the interest of justice "because she will return to the community faster and she will put the public at risk again because she has not acknowledged what's gone on up until this point."  The prosecutor asserted that the aggravating factors outweighed the mitigating factors and that the upper term was appropriate "to keep the public safe for [as] long as possible."

Defense counsel argued, "balancing the extensive mitigation in this case and in her life with the aggravation, which is that [Rayl]'s had multiple convictions, I don't think there is any way that the Court can say that those aggravating factors outweigh the plentiful mitigation and trauma that she's been through as a victim and throughout her childhood and everything that she struggled with."

---

[3] The prosecutor argued, "This is not a situation where the day that this DUI occurred Ms. Rayl was fleeing from someone abusive."

[4] Defense counsel acknowledged that Rayl had not taken responsibility for her current DUI as she "denied that the crime that she was accused of occurred."

6

The trial court declined to grant probation, noting Rayl "does not appear to grasp the seriousness of her drinking addiction" as she did not believe she needed residential treatment "despite this being her sixth DUI conviction."[5] Considering the mitigating factors argued by defense counsel, the court found it would be contrary to the interest of justice to sentence Rayl to the lower term, again emphasizing that this was her sixth DUI conviction. The court agreed with the prosecutor that domestic violence did not appear to be a contributing factor to the commission of the current offense. The trial court observed that the jury did not believe Rayl's testimony that she did not start drinking until she stopped driving, and the court did not "believe that story . . . either." The court stated that it agreed with the prosecutor's arguments and that "the upper term is merited and appropriate in this case."

## DISCUSSION

As relevant to this appeal, section 1170(b)(6) provides, "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of

---

[5] In the context of denying probation, the court noted that Rayl was originally placed on pretrial release with a monitor, but after a few months, she had alcohol-related events and admitted herself to the hospital. She was then given another chance at pretrial release, but she had another drinking event. "She then had pretrial release terminated and was given $250,000 bail, which she bailed out on. She was on bail in January of 2022. Shortly after that [she was] ordered [to comply with] Soberlink terms in addition to her bail. In less than a month she showed a 34-hour testing gap on her Soberlink where she didn't test as instructed. She then had another 25-hour testing gap after that in July of 2022. In August of 2022 she had another gap where she was not testing as directed. . . . She couldn't stay sober. She couldn't stop drinking. The Court had to remand her and find that a preventative detention was in order to secure the safety of the community and of Ms. Rayl."

the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] . . . [¶] (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence . . . ."

Rayl contends this case must be remanded for resentencing either because the trial court "did not seem to realize the full scope of Penal Code section 1170, subdivision (b)(6)" or because the court abused its discretion. Rayl's claims lack merit.

First, "[a]bsent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.) Here, nothing in the record suggests the trial court did not understand the scope of its discretion under section 1170(b)(6). To the contrary, Rayl filed a sentencing brief arguing she was entitled to the lower term under section 1170(b)(6), both counsel addressed the issue at the sentencing hearing, and the trial court stated it agreed with the prosecutor's arguments that the lower term was "contrary to the interest of justice" in this case, all of which demonstrates the trial court *was* aware of the scope of its discretion under section 1170(b)(6).

Second, Rayl does not show abuse of discretion. Initially, we see no error in the trial court's determination that the circumstance of Rayl being a victim of intimate partner violence was not a contributing factor to the commission of her current offense. (See *People v. Achane* (2023) 92 Cal.App.5th 1037, 1044 [noting that a trial court's decision whether to apply the lower term under section 1170(b)(6) "depends on both factual determinations and the exercise of discretion"].) And we conclude it was

8

within the trial court's discretion to determine the aggravating factor of Rayl's many prior DUIs outweighed the mitigating circumstances such that it would be contrary to the interests of justice and public safety (as argued by the prosecutor) to impose the lower term in this case. Rayl complains that the trial court "neglected to mention" that her prior performance on parole was successful, but we presume, absent "an affirmative record to the contrary," that the trial court "considered all of the relevant factors." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) That the court did not expressly mention every potential mitigating circumstance " 'does not mean the trial court ignored or overlooked such evidence.' " (*People v. Tully* (2012) 54 Cal.4th 952, 1064.)

Rayl also seems to suggest that, once she made a prima facie showing that a mitigating circumstance under section 1170(b)(6) applied, the trial court was precluded from imposing an upper term because "the middle term becomes the aggravated term." To the extent this is her position, Rayl offers no authority for this argument, and we do not read the statute as prohibiting an upper term whenever a section 1170(b)(6) mitigating circumstance may be present.

## DISPOSITION

The judgment is affirmed.

_____
Miller, J.

WE CONCUR:


_____
Stewart, P. J.


_____
Mayfield, J.[*]


A167791, *People v. Rayl*

---

[*] Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.